IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

DRY CREEK LANDFILL, INC., an Oregon
corporation,

               Plaintiff,

   v.

WASTE SOLUTIONS GROUP, INC., a California
corporation,

               Defendant.

CV-04-3029-ST

OPINION AND ORDER

STEWART, Magistrate Judge:

## INTRODUCTION

This is a declaratory judgment action involving the interpretation of a contract between plaintiff, Dry Creek Landfill, Inc. ("Dry Creek"), and defendant Waste Solutions Group, Inc. ("WSG"). On December 26, 2006, this court entered Judgment in Dry Creek's favor on the last issue remaining for trial. Contending that it prevailed on a core issue in the litigation, WSG has

1 - OPINION AND ORDER

filed a request for an award of attorney fees in the sum of $94,595.00 (docket # 112). Dry Creek objects to that request, claims that it is the prevailing party, and has filed its own request for an award of attorney fees and costs in the sum of $32,299.72 (docket #113) and a supplemental award of attorney fees in the sum of $5,208.00 (docket #114). For the reasons set forth below, this court denies all requests.

## BACKGROUND

In 1998, WSG entered into a 15-year contract with the Humboldt Waste Management Authority ("HWMA") to handle waste transfer services for municipalities in Humboldt County, California ("1998 HWMA Agreement"). Also in 1998, WSG entered into a contract with Dry Creek for WSG to dispose of HWMA's truck-hauled waste at the Dry Creek landfill in Medford, Oregon ("Disposal Contract"). The Disposal Contract terminated in the event the 1998 HWMA Agreement terminated for any reason.

In May 2003, Dry Creek learned that WSG was using another landfill as an alternate site for truck-hauled waste which it believed constituted a breach of the Disposal Contract by reducing the volume of waste delivered to the Dry Creek Landfill. To avoid any contention by WSG that Dry Creek had waived or was estopped from asserting its claim that the parties were no longer contractually bound, Dry Creek did not continue to assess and bill WSG from May 2003 through November 2005 for amounts due to Dry Creek under the Disposal Contract.

Claiming that the 1998 HWMA Agreement was "replaced and superseded" by a later contract that authorized WSG to use the alternative landfill for truck-hauled waste ("2003 HWMA Agreement"), Dry Creek filed this action on April 23, 2004, seeking a declaratory judgment that the Disposal Contract had been terminated in April 2003.

Approximately three months later on July 30, 2004, the HWMA gave written notice to WSG of its desire to terminate its relationship with WSG effective March 23, 2005, "for convenience," as permitted by their contract. A key reason for that notice was the cloud of Dry Creek's lawsuit against WSG. Termination of that relationship would result in termination of the Disposal Contract. However, WSG never told Dry Creek of HWMA's notice of termination. The HWMA and WSG then engaged in negotiations over the terms and circumstances under which the HWMA could achieve a buyout of the 1998 HWMA Agreement.

In March 2005, the parties filed cross-motions for summary judgment, and Dry Creek filed a motion to add three new claims based upon evidence that first came to light in late January 2005 as a result of discovery, including HWMA's notice of termination. At a mediation on May 11, 2005, the HWMA and WSG tentatively resolved their dispute, "subject to the preparation of a formal and definitive settlement agreement between the parties."

In its Findings and Recommendation dated July 28, 2005 ("F&R"), this court recommended granting partial summary judgment to WSG against Dry Creek's claim that the Disposal Contract had been terminated as a result of the 2003 HWMA Agreement (docket #70). The court also granted Dry Creek's motion to amend its complaint to add two new claims, one seeking declaratory relief that the Disposal Contract had been terminated by virtue of WSG's alleged breach of a duty of good faith and fair dealing, and the second alleging breach of contract based on a decrease in the volume of waste delivered to the Dry Creek landfill by WSG (docket # 69). The court denied "as futile" Dry Creek's motion for leave to file a third claim for declaratory relief that the Disposal Contract would be terminated as a result of the HWMA's notice of termination, since the proposed claim would lack an actual controversy if the HWMA

3 - OPINION AND ORDER

and WSG reached a settlement resulting in termination of the 2003 HWMA Agreement. On November 14, 2005, Judge Ancer L. Haggerty adopted the F&R (docket # 80).

Eight days later, on November 22, 2005, the 2003 HWMA Agreement was terminated by the HWMA and WSG. That caused a simultaneous termination of the Disposal Contract, except for existing and ongoing obligations of Dry Creek and WSG, rendering moot Dry Creek's claims for declaratory relief.

On December 20, 2005, this court granted the parties' stipulated motion permitting Dry Creek leave to file a Second Amended Complaint, which included the breach of contract claim upon which Dry Creek prevailed at trial (dockets # 84 & # 85). Pursuant to the Pretrial Order lodged on July 7, 2006, the only claim remaining for trial was Dry Creek's claim that WSG breached the Disposal Agreement by virtue of its failure to pay Dry Creek the CPI adjusted disposal fee for services provided prior to its termination (docket # 91). WSG denied liability on that claim based upon the affirmative defenses of estoppel, waiver, recoupment and set-off, contending that Dry Creek voluntarily relinquished its right to increase the disposal fee by not requesting payment after May 2003.

The parties waived a jury trial and consented to allow the Magistrate Judge to enter final orders and judgment in this case in accordance with FRCP 73 and 28 USC § 636(c) (docket # 90). After holding a court trial on October 20, 2006, this court entered Findings of Fact and Conclusions of Law on October 27, 2006 (docket # 109). This court found that Dry Creek had met its burden of proving that WSG had breached the Disposal Contract by failing and refusing to pay the CPI adjusted disposal fees owed by WSG to Dry Creek. It further found that WSG had failed to satisfy its burden of proof with regard to its affirmative defenses, none of which served to reduce or eliminate Dry Creek's claim for breach of contract. On December 26, 2006,

4 - OPINION AND ORDER

judgment was entered in favor of Dry Creek and against WSG on Dry Creek's breach of contract claim in the principal sum of $132,052.90.

## ANALYSIS

### I. Prevailing Party

Section 7.11 of the Disposal Contract provides for an award of attorney fees to the prevailing party incurred in "any legal action or proceeding . . . brought for the enforcement or interpretation of this Agreement, or because of an alleged dispute, breach, default . . . in connection with any of the provisions of this Agreement." According to Section 7.9 of the Disposal Contract, the law of California governs.

Both parties seek an award of attorney fees as the prevailing party. WSG claims that it prevailed on the central dispute in the litigation, namely whether a Disposal Contract between the parties had been terminated in April 2003. As a result, it seeks an award of fees through November 14, 2005, when Judge Haggerty granted its motion for partial summary judgment on the declaratory judgment claim. On the other hand, Dry Creek claims that it prevailed on its breach of contract claim that WSG owed it disposal fees under the Disposal Contract prior to termination and seeks an award of fees incurred after November 14, 2005, in connection with that claim.

With respect to an award of attorney fees in this case, California Civil Code § 1717(b) provides that: "The court, upon notice and motion by a party, shall determine who is the party prevailing on the contract . . . the party prevailing on the contract shall be the party who recovered the greater relief in the action on the contract." In determining whether a party has prevailed, the trial court "compare[s] the relief awarded on the contract claim or claims with the parties' demands on those same claims and their litigation objectives as disclosed by the

5 - OPINION AND ORDER

pleadings, trial briefs, opening statements, and similar sources." *Hsu v. Abbara*, 9 Cal 4th 863, 876, 39 Cal Rptr 2d 824, 891 P2d 804 (1995). "When the results of litigation are 'mixed' the trial court may determine that no party has prevailed on the contract." *Id*. "If neither party achieves a complete victory on all the contract claims, it is within the discretion of the trial court to determine which party prevails on the contract or whether, on balance, neither party prevailed sufficiently to justify an award of attorney fees." *Scott Co. of Cal. v. Blount, Inc.*, 20 Cal 4th 1103, 1109, 86 Cal Rptr 2d 614, 979 P2d 974 (1999).

Clearly, the results in this case are mixed. Dry Creek first asserted only one claim seeking a premature termination of the Disposal Contract based on the 2003 HWMA Agreement. WSG prevailed on that claim after more than a year of litigation. Both parties incurred the bulk of their attorney fees in contesting this issue. Dry Creek incurred approximately 80% of its fees seeking a termination of the Disposal Contract while WSG incurred approximately 75% of its fees defending it.

After not succeeding on that claim, Dry Creek then added two more legal theories to assert that the Disposal Contract had been terminated and one more claim to recover the escalated disposal fees under the Disposal Contract which it had not billed to WSG while litigating the termination issue. WSG complains that not until August 2005, after losing its first claim, did Dry Creek make any demand or claim to recover the CPI adjustment. However, that was not inconsistent with Dry Creek's litigation position that the Disposal Contract had terminated in April 2003 when the HWMA added the Anderson Landfill as an alternate site for truck-hauled waste, reducing the amount of waste directed to the Dry Creek Landfill. If the Disposal Contract had been terminated by that act, as Dry Creek alleged, then Dry Creek was not entitled to recover any CPI adjustment. Only after the court decided that the Disposal Contract

had not been terminated was Dry Creek in a position to require WSG to pay the CPI adjustment. A breach of contract claim for failure to pay the CPI adjustment ripened only after WSG failed to comply with a demand to pay. On the other hand, Dry Creek could easily have avoided litigation of this claim had it simply informed WSG of that potential claim when it ceased billing WSG for the CPI adjustment.

In sum, this court rejected one theory of termination by Dry Creek as futile, and Dry Creek abandoned the other theory of termination after the Disposal Contract terminated by its terms in November 2005. Thus, of the four claims asserted by Dry Creek, the court rejected two and two were rendered moot. Dry Creek ultimately prevailed on only one of its five claims which it first alleged in December 2005.

On the other hand, this court cannot conclude that WSG is the prevailing party. It won one claim, but also lost one claim. Termination of the Disposal Contract may well have been the core issue in the litigation initially, and WSG succeeded in avoiding termination in April 2003, as Dry Creek had initially sought. However, the Disposal Contract ultimately terminated in November 2005, in part due to the cloud created by this lawsuit.

More importantly, much of the expense incurred over the issue of termination by virtue of the 2003 HWMA Agreement was unnecessary. Only three months after Dry Creek filed suit, the HWMA gave written notice of its desire to terminate its relationship with WSG. Had WSG advised Dry Creek of that notice, Dry Creek maintains that all of the discovery expense and fees incurred with respect to the cross-motions for summary judgment could have been avoided. Had it known what was happening between WSG and the HWMA, Dry Creek claims that it would have been content to wait. It first learned of the HWMA's notice of termination in January 2005, but still filed a summary judgment motion on March 21, 2005. However, it filed

7 - OPINION AND ORDER

that motion only after WSG filed a summary judgment motion two weeks earlier.  Dry Creek later learned that WSG continued to press the issue of the continued viability of the Disposal Contract in order to secure a favorable ruling that would force the HWMA to compensate WSG for the value of its interest in the Disposal Contract as part of the HAMA's buy-out of the 2003 HWMA Agreement.  If the Disposal Contract had terminated in 2003, as Dry Creek contended, then WSG had less leverage in its buy-out negotiations with the HWMA.  WSG does not contest that characterization of its motivation.

Given the larger litigation objectives, neither party to this case achieved success.  Dry Creek was not able to terminate the Disposal Contract in April 2003 and had to await the outcome of WSG's negotiation with the HWMA for termination of the 2003 HWMA agreement.  Dry Creek did obtain a judgment for the CPI adjusted disposal fee, but that was equal to what it was contractually entitled to receive after it lost its first claim.  Although it appears that Dry Creek was left in the same position had it never filed suit initially, its lawsuit played some role in the HWMA's decision to prematurely terminate the 2003 HWMA Agreement.  On the other side of the ledger, WSG avoided an early termination of the Disposal Contract, although it could have avoided litigation since the Disposal Contract was ultimately terminated early anyway.  At most, WSG delayed termination for over two years to assist in its buy-out negotiations with the HWMA, apparently with only limited success.  In addition, it chose to dispute Dry Creek's entitlement to the CPI adjusted disposal fee and lost.  Unlike *Sears v. Baccaglio*, 60 Cal App 4th 1136, 1159, 70 Cal Rptr 2d 769 (Cal App 1 Dist Jan. 14, 1998), relied upon by WSG, Dry Creek obtained a judgment by prevailing on a contested breach of contract claim, not through "fortuitous circumstances."

8 - OPINION AND ORDER

WSGA also argues that, at a minimum, the court should treat the parties' competing claims for attorney fees and costs as arising from distinct and separable causes of action on the same contract and offset Dry Creek's claimed fees against WSG's claimed fees. Despite the attractiveness of that approach, it is not supported by California law. *Epstein v. Frank*, 125 Cal App 3d 111, 125, 177 Cal Rptr 2d 831 (Cal App 2 Dist Oct. 30, 1981), cited by WSGA, involved 15 claims on 15 notes, each of which contained an attorney fee provision. Each claim in that case could have been litigated separately. Here, in contrast, Dry Creek's breach of contract claim could only be litigated once it failed to obtain declaratory relief terminating the Disposal Contract as of April 2003. The claims are related and not independent.

Thus, this court concludes that, "on balance, neither party prevailed sufficiently to justify an award of attorney fees." *Scott Co. of Cal.*, 20 Cal 4th at 1109. As a result, both parties' requests for an award of attorney fees and costs are denied.

## II.    Other Arguments

Even if WSGA is deemed the prevailing party, Dry Creek contends that its request for an award of attorney fees should be denied because WSGA failed to file a motion, supporting authorities or affidavits as required by FRCP 54 and Local Rule 54. WSGA filed a "Statement of Attorney Fees," supported only by a conclusory statement that it prevailed on a core issue, by an identification of the lawyers and legal assistants who worked on the case, a brief description of the experience of the Oregon lawyers, and their hourly rates and time spent (attaching billing records), and by a brief citation to Oregon law. Even if this court deems this submission as a motion, WSGA did not provide any affidavit to authenticate or support the billing records, any information justifying the billing rates, or any supporting California law. Furthermore, WSGA provided no justification for the involvement of California counsel or information as his hourly

9 - OPINION AND ORDER

rate. As a result, there is no basis by which the court can meaningfully determine a reasonable attorney fee award.

In addition, Dry Creek properly notes that a substantial amount of "block-billing" entries by WSG's lawyers are included in their billing statements. Fee petitions which include inadequate detail or that fail to separate time for individual tasks may be totally or partially denied. *Taylor v. Albina Cmty. Bank*, 2002 WL 31973738 (D Or Oct. 2, 2002); *Oberdorfer v. Glickman*, 2001 WL 34045732 (D Or Sept. 14, 2001). The California counsel also billed a considerable amount of time that was not expended in defending this litigation.

As a result, WSG's Statement of Attorney Fees represents an inadequate basis to premise an award of attorney fees and would be denied with leave to amend, even if WSGA were the prevailing party.

## **ORDER**

For the reasons set forth above, Defendant's Statement of Attorney Fees (docket # 112), Plaintiff's Motion for Award of Attorney Fees and Costs (docket #113), and Plaintiff's Supplemental Motion for Attorney Fees (docket #114) are DENIED.

DATED this 6th day of March, 2007.

/s/ Janice M. Stewart
Janice M. Stewart
United States Magistrate Judge